**STATE of Iowa, Plaintiff-Appellee,**

v.

**Dennis L. CASTEEL, Defendant-Appellant.**

No. 85–840.

Court of Appeals of Iowa.

June 4, 1986.

Charles Harrington, Chief Appellate Defender, and Linda Del Gallo, Asst. Appellate Defender, for defendant-appellant.

Thomas J. Miller, Atty. Gen., David L. Dorff, Asst. Atty. Gen., and Micheal A. Riepe, Co. Atty., for plaintiff-appellee.

Heard by DONIELSON, P.J., and SNELL and SACKETT, JJ.

SNELL, Judge.

On September 19, 1984, Dennis Casteel was working at the Metromail Company in Mount Pleasant. When his shift ended at 3:00 a.m., he left in his vehicle and drove on Highway 34. Officer Paul Meyer, who was sitting at a local service station, observed Casteel's vehicle and noticed a problem with Casteel's taillight and muffler system. He pulled out behind Casteel's vehicle, followed it to the intersection of Highway 218 and 34, through the intersection after the stop, and then pulled Casteel's vehicle over in the parking lot of the Iowa State Liquor Store on East Washington Street at approximately 3:15 a.m. There, Officer Meyer discovered the vehicle also had no brake lights or turn signals. He then asked Casteel for his driver's license. He took the license to his squad car to write a warning for equipment violations and ran a driver's license check. That check revealed an outstanding warrant for Casteel's arrest for the simple misdemeanor of fifth-degree theft. Officer Meyer then radioed for a backup unit and Casteel was arrested.

Officer Christopher Davis arrived on the scene as the backup unit and testified that when Casteel was advised of the theft warrant, he asked Casteel if he had $50.00 to pay his bond, and Casteel replied that he did not.

At that time, he advised Casteel of two options regarding his automobile: it would either have to be towed or an officer could drive it to the Henry County Law Enforcement Center. Given those options, Casteel agreed to let an officer drive it to the center. Casteel's vehicle was driven to the law enforcement center and parked in an unenclosed cement parking lot south of the center and locked.

Later that morning, Officer Davis made a physical search of the vehicle while Officer Meyer made an inventory of the items therein. While conducting their inventory, the officers seized, from the locked glove compartment, a Comtrex cold capsule bottle which they believed held some marijuana seeds, a tin metal container with a lid which contained a leafy green substance, an electrical clamp with a leather string which they believed had marijuana residue on it, and a plastic prescription pill bottle.

A possession of a schedule I controlled substance (marijuana) charge was then filed against Casteel, and he was questioned about the seized items at approximately 6:30 a.m. Casteel was released from custody after appearing before the magistrate that morning at 9:30 a.m. The leafy green material seized from the tin container was tested and found to be marijuana.

Casteel filed a motion to suppress the evidence seized from his vehicle, which the trial court overruled. Casteel filed a waiver of jury trial, and a bench trial commenced on April 10, 1985. The court found Casteel guilty as charged. He was sentenced to pay a $100 fine.

On appeal, Casteel contends that the impoundment and the inventory search of his vehicle violated his fourth amendment rights and, therefore, any evidence seized should have been suppressed.

It is unquestioned that the inventory search of Casteel's automobile was performed without a warrant. The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures, and warrantless searches are per se unreasonable unless they fall within

carefully-drawn exceptions to the warrant requirement. *State v. Roth*, 305 N.W.2d 501, 504 (Iowa), *cert. denied*, 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981). Whether a search and seizure is unreasonable within the meaning of the fourth amendment depends upon the facts and circumstances of each case. *Id.* "The test of reasonableness cannot be fixed by per se rules." *South Dakota v. Opperman*, 428 U.S. 364, 373, 96 S.Ct. 3092, 3099, 49 L.Ed.2d 1000, 1007 (1976) (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 509–510, 91 S.Ct. 2022, 2060, 29 L.Ed.2d 564, 608 (1971)).

One established exception to the warrant requirement is the motor vehicle inventory. Applying the reasonableness standard, courts have consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. *Opperman*, 428 U.S. at 369–73, 96 S.Ct. at 3097–99, 49 L.Ed.2d at 1005–07.

> When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody; the protection of the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger. (citations omitted)

*Id.* at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005 (upheld inventory search as reasonable where police found marijuana in a plastic bag in the unlocked glove compartment of an impounded vehicle).

While *Opperman* did not precisely delineate the permissible scope of inventory searches, it does indicate that an inventory may not be conducted as a subterfuge for criminal investigation. *Id.* at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008–09. "It is, of course, necessary that such inventories be conducted as an incident to the caretaking function of the police, in accordance with

the established procedures, and not as a guise for a warrantless search." *State v. Kuster*, 353 N.W.2d 428, 431 (Iowa 1984). Under the exclusionary rule, evidence obtained by law officers in violation of the fourth amendment is inadmissible as evidence at trial. *Roth*, 305 N.W.2d at 504.

■ **Impoundment.** The legal validity of an inventory search depends upon the lawfulness of the underlying impoundment. *Roth*, 305 N.W.2d at 504. The Iowa Supreme Court has explained the test for when impoundment is justified:

> In the absence of statute or ordinance, there must be reasonable cause for the impoundment. (citations omitted). The burden of demonstrating the need to impound is on the State. (citations omitted). In formulating a reasonableness test, one authority states:
>
> It is submitted that for an impoundment of an arrestee's vehicle to be reasonable under the fourth amendment, the arresting officer should be required (i) to advise the arrested operator "that his vehicle will be taken to a police facility or private storage facility for safekeeping unless he directs the officer to dispose of it in some other lawful manner," and (ii) to comply with any reasonable alternative disposition requested. Surely, the police should not be expected to undertake delivery of the auto to some distance point or to make any other disposition which would be more onerous than having the vehicle brought to the station. But if the driver asks that his car be left at the scene and the circumstances are such that it can be lawfully parked in the vicinity, then his wishes should be respected. 2 W. LaFave, *Search and Seizure* § 7.3, at 559 (1978).

*Kuster*, 353 N.W.2d at 431–32. The court further noted that:

> The common theme underlying these cases and others is that something more must be shown to justify impoundment of a car than that it would otherwise be left unattended. There must be a showing that some reasonable necessity prompted the impoundment. This is a

salutary rule, for otherwise police would be authorized to freely stop a car for a minor traffic infraction, impound it and search it with impunity. Surely such a circumstance is not consonant with the Fourth Amendment. As the court in *United States v. Edwards,* 554 F.2d 1331, 1339 (5th Cir.1977), said: "The fourth amendment is not crushed by the four wheels of an automobile; automobiles do not work a forfeiture of privacy." *Id.* at 432 (quoting *State v. McDaniel,* 156 N.J. Super. 347, 358, 383 A.2d 1174, 1179 (1978)).

In *Kuster,* the defendant was arrested for terrorism in a tavern in downtown Stuart, Iowa. His pickup, which was locked and legally parked on a city street near the tavern, was impounded by the police and searched without a warrant. The court cited numerous factors in determining that the impoundment was unreasonable. These included that the defendant was not near his vehicle when he was arrested; the vehicle was locked, legally parked, and presented no danger to the public; there was no evidence the vehicle was in danger of theft or vandalism; no effort was made by the police to allow the defendant to provide for the care of the vehicle and no inquiry was made of him as to what he wanted to have done with the vehicle; and the police department had no established policy regarding impoundment and motor vehicle inventories. *Id.* at 432.

Several of these factors are also weighty in the case at bar. The record reveals that Casteel was pulled over by Officer Meyer for suspected equipment violations at approximately 3:15 a.m. Casteel parked in the Iowa State Liquor Store parking lot where an old horse trailer had been parked for several months. This was a parking lot open to the public and Casteel's car was obviously not obstructing traffic, otherwise presenting a danger to the public, or a nuisance. There was also no evidence that the vehicle itself was in danger of theft or vandalism. No effort was made by the police to allow Casteel to provide for the care of his vehicle and no inquiry was made of him as to what he wanted to have done with the vehicle. Casteel was told that his automobile would either be towed or an officer could drive it to the Henry County Law Enforcement Center. There is also no suggestion of intoxication or any other reason why Casteel was not capable of making a choice regarding safe disposition of his automobile. The officers had no suspicion that the vehicle was stolen, contained contraband, or was involved in the commission of a crime so that its retention as evidence was necessary. Furthermore, the Standard Operating Procedures of the Mount Pleasant Police Department do not mandate impoundment if the arrestee's vehicle can be "otherwise cared for to avoid liability." This case is devoid of the factors commonly found to justify impoundment. *See e.g. LaFave* § 7.3(c) at 533–60 (vehicle removed from public highway, abandoned, illegally parked, disabled danger to traffic, stolen or criminal evidence, or driver incapacitated).

We conclude under these circumstances the impoundment was unreasonable. Casteel's vehicle could have been left in the parking lot until it was determined whether his absence would be extended, or his wife or brothers residing in Mount Pleasant could have retrieved it. "Such alternative means of disposition serve not only to protect the arrestee's possessory and privacy interests in the vehicle but also to relieve the police of continuing responsibility for the car and its contents, and thus are to be preferred over impoundment when one such alternative has been requested by a properly-advised arrestee and can reasonably be accomplished under the circumstances." *LaFave,* § 7.3(c) at 560.

Our decision is in accord with other jurisdictions which have determined that no substantial necessity for impoundment exists where the defendant's vehicle is legally parked in an off-street parking area. *United States v. Pappas,* 735 F.2d 1232, 1234 (10th Cir.1984) (improper impoundment where car was parked in parking lot of a club); *Weed v. Wainwright,* 325 So.2d 44,

45 (Fla.App.1976) (impoundment improper where arrestee's car parked in store parking lot); *Dunkum v. State*, 138 Ga.App. 321, 325, 226 S.E.2d 133, 136 (1976) (impoundment improper where arrestee's automobile parked in the parking lot of an unused nightclub); *State v. Boster*, 217 Kan. 618, 626–27, 539 P.2d 294, 301 (1975) (no legal justification for impounding car where alternative to impoundment exists); *Dixon v. State*, 23 Md.App. 19, 38–39, 327 A.2d 516, 527 (1974) (necessity for impounding car not demonstrated where car was in public parking lot at time of arrest); *State v. Slockbower*, 79 N.J. 1, 11–13, 397 A.2d 1050, 1053–55 (1979) (impoundment improper since car could have been safely locked at scene of arrest); *Kelly v. State*, 607 P.2d 706, 708 (Okla.Crim.1980) (impoundment improper where car parked in parking lot of business establishment); *State v. Thirdgill*, 46 Or.App. 595, 599–600, 613 P.2d 44, 46 (1980) (impoundment improper where car was in restaurant parking lot); *Rodriguez v. State*, 641 S.W.2d 955, 958 (Tex.App.1982) (impoundment improper where no showing it was illegally parked in an alley).

Because we find that the impoundment of Casteel's vehicle was unreasonable, the inventory search of the vehicle was unlawful and evidence obtained as a result thereof should have been suppressed.

■ **Inventory.** Even were we to find that the impoundment was reasonable, we would conclude that the inventory search exceeded its permissible scope. In *Roth*, the Iowa Supreme Court stated that locked and unlocked car trunks and glove compartments are within the permissible scope of inventory searches. The court explained its rationale as follows:

> To exclude these kinds of compartments from the scope of inventory searches would clearly thwart the first stated objective of protecting the property itself while it is in custody. It is a meritless argument to say that the owner of the car was satisfied with the security offered by these compartments because the storage of a vehicle at a police stor-

age yard for an indeterminate length of time was not likely to be the sort of circumstances the owner had in mind in storing valuables in the car. Even more clearly, the second purpose for these searches, protection of the police against claims of loss, is not served if police do not inventory the entire contents of the vehicle. Police cannot reasonably be expected to defend against claims of loss, whether legitimate or false, reasonable or unreasonable, if they are not permitted to catalog what they took into custody. Moreover, a car owner inclined to make a false claim could be expected to base the claim on property missing from an area the police were not permitted to search. Finally, the third purpose, protection of the police from potential danger, can only be served by allowing police to inventory the contents of automobile trunks and other compartments. Whether the potential danger is a weapon which, if stolen, could pose a serious safety threat, explosives or even a leaking spare gasoline container threatening to ignite the vehicle, it can be averted only by permitting police to discover these before the potential harm materializes.

*Roth*, 305 N.W.2d at 506 (quoting *State v. Prober*, 98 Wis.2d 345, 354–55, 297 N.W.2d 1, 6–7 (1980)). The court, however, recognized that an inventory search may not extend to all closed or sealed, locked or unlocked containers, found within the automobile's compartments.

> In recognizing that there is a greater expectation of privacy in closed or sealed containers found inside a vehicle than there is in a vehicle itself, we are balancing the need of the government (here, those relating to inventory searches) against the right of people to be free of warrantless intrusions into their personal effects. The balance tips in favor of the privacy of personal effects because the purpose of an inventory can be adequately served by inventorying a container as a closed unit. It is thereby secure from theft, and exposure to claims of loss is

reduced. *But see: State v. McDougal,* 68 Wis.2d [399] at 415–16, 228 N.W.2d 671 (R. Hansen, J., dissenting). Therefore, in conducting an inventory search of a vehicle, police officials may not open or search the contents of closed containers which could alternatively be removed from the vehicle and inventoried as a unit.

*Roth,* 305 .N.W.2d at 507 (quoting *Prober,* 297 N.W.2d at 7). The right to search an automobile does not carry with it the right to search everything found within it. *Arkansas v. Sanders,* 442 U.S. 753, 762–63, 99 S.Ct. 2586, 2592, 61 L.Ed.2d 235, 244 (1979). In *Roth,* police officers found marijuana in a brown paper bag in the locked trunk of the defendant's automobile. The court determined that a person who placed items in a sack could not have a reasonable expectation of privacy in doing so. *Id.* at 507–08. Therefore, it found the inventory search to be proper. *Id.*

The Eighth Circuit Court of Appeals phrases the test in terms of whether the governmental interests in performing an inventory search are better served by itemizing the contents of a container or by storing the container as a unit. *United States v. Bloomfield,* 594 F.2d 1200, 1202 (8th Cir.1979). In *Bloomfield,* the court concluded that a knapsack should have been inventoried as a unit rather than opened and itemized. It relied on the fact that the knapsack was securely closed so that there was no danger of anything falling out. *Id.* at 1202, 1203. "In this way the knapsack, which is locked up as a whole in police headquarters, has never been opened and its contents have never been reshuffled and replaced. To our minds, this would minimize the possibility of loss and the possibility of false claims against police by the owner." *Id.* at 1202; see also *People v. Counterman,* 556 P.2d 481, 485 (Colo.1976) (legitimate purpose of inventory could have been fully accomplished by merely noting the item as a sealed knapsack rather than examining contents); *State v. Jewell,* 338 So.2d 633, 639 (La. 1976) (opening Excedrin bottle and examining contents was inconsistent with purpose and permissible scope of a true inventory search); *State v. Houser,* 95 Wash.2d 143, 156, 622 P.2d 1218, 1226 (1980) (legitimate purpose behind inventory search could have been effectuated by inventorying toiletry kit as a unit).

In the case at bar, while the Comtrex bottle and tin box were themselves in plain view once the glove compartment was opened, their contents were not evident but were securely sealed within. The outward appearance of these containers did not indicate to the police that they held dangerous instrumentalities. We conclude that the safekeeping purpose of the inventory could have been fully accomplished by noting the containers as a Comtrex bottle and a tin box.

We believe that our holding is consistent with *Roth.* A brown paper bag is a disposable, unsealable container of insubstantial construction. By contrast, the pill bottle and tin box here at issue are hard, securely-closed containers which prevent articles stored within from falling out.

For the foregoing reasons, we find that the inventory search exceeded its permissible scope and the evidence resulting therefrom should have been suppressed.

REVERSED.

SACKETT, J., concurs.

DONIELSON, P.J., dissents.

DONIELSON, Presiding Judge.

I respectfully dissent. The majority is convinced that "something smells fishy" in this case and is far too willing as an appellate tribunal to reverse. The tone of the majority opinion suggests an unnecessary skepticism towards the police's actions, which leads them to ultimately determine this search was a sham or pretext and, therefore, unreasonable.

A probative fact which the majority omits from its discussion is that *no* evidence indicates that the police knew this defendant, the police knew this defendant was either a dealer or user of drugs, or had any reason whatsoever to concoct an un-

derhanded scheme to search his vehicle for contraband.

## I.

The majority finds the police's decision to impound was improper and invalid. Defendant contended he should have been allowed to leave his automobile parked, been given the option of contacting a third party to pick up his automobile, or to sign a waiver of liability for articles in the automobile.

**A. Impoundment Decision.** The police conceded that no probable cause was present. Thus, the legal standards for this case were clearly set forth in *State v. Kuster*, 353 N.W.2d 428, 431–32 (Iowa 1984), as follows:

> Routine inventories of vehicles impounded by law enforcement officers have been based upon three distinct needs: (1) the protection of the owner's property while it remains in police custody; (2) the protection of the officers against claims or disputes over the property; and (3) the protection of the officers from potential danger. *South Dakota v. Opperman*, 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005. *See also State v. Roth*, 305 N.W.2d 501, 504–05 (Iowa 1981). Even if these procedures are viewed as "searches" rather than routine inventories, they are almost universally permissible under the "reasonableness" standard of the fourth amendment. *Opperman*, 428 U.S. at 370–72, 96 S.Ct. at 3097–98, 49 L.Ed.2d at 1006–07.
>
> It is, of course, necessary that such inventories be conducted as an incident to the caretaking function of the police, in accordance with the established procedures, and not as a guise for a warrantless search. *See Opperman*, 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1008–09.
>
> The legal validity of the inventory depends upon the lawfulness of the underlying impoundment [Authorities].
>
> The test for whether impoundment is justified has been variously stated. In the absence of statute or ordinance, there must be reasonable cause for the impoundment. [Authorities].
>
> The burden of demonstrating the need to impound is on the State. [Authorities]. In formulating a reasonableness test, one authority states:
>
> It is submitted that for an impoundment of an arrestee's vehicle to be reasonable under the fourth amendment, the arresting officer should be required (i) to advise the arrested operator "that his vehicle will be taken to a police facility or private storage facility for safekeeping unless he directs the officer to dispose of it in some other lawful manner," and (ii) to comply with any reasonable alternative disposition requested. Surely, the police should not be expected to undertake delivery of the auto to some distance point or to make any other disposition which would be more onerous than having the vehicle brought to the station. But if the driver asks that his car be left at the scene and the circumstances are such that it can be lawfully parked in the vicinity, then his wishes should be respected. 2 W. LaFave, *Search and Seizure* § 7.3, at 559 (1978).

I note at the outset this case is distinguishable from *Kuster* where impoundment was deemed unreasonable and more akin to *State v. Roth*, 305 N.W.2d 501 (Iowa 1981), where impoundment was deemed reasonable.

In *Kuster*, defendant was arrested inside a tavern and he had already legally parked and locked his automobile on the street which was "so attenuated from the actual site of the defendant's arrest as to negate any need for protection by the police." 353 N.W.2d at 432. Whereas in *Roth*, as in this case, defendant was driving the automobile when arrested and forced to park it in a place not of his choosing.

While I concur with the majority view that the *place* a vehicle is parked is important in the analysis, I further believe the police's tort liability concerns for protecting a parked vehicle are significantly greater when the police dictate where the individual should park his vehicle as opposed to

the scenario where the individual has already parked his vehicle and the police arrest the individual at another location. Because the police directed where this suspect should park his vehicle, their concern for insuring the vehicle's safety was more than justified.

I also find that impoundment of this automobile was consistent with the local police operating procedure which provided:

> Vehicles of individuals arrested by officers of this Department become the responsibility of this Department and must be either impounded and towed or otherwise cared for to avoid liability.

The majority reads the "or otherwise cared for" language as requiring the police to inform defendant of the option of having a third party come and care for the automobile. *See State v. Goodrich,* 256 N.W.2d 506 (Minn.1977) (Defendant, who lived in a small town, *had* arranged for alternative means of safeguarding vehicle by calling his mother and brother who did arrive on the scene minutes after the arrest.). I find nothing unreasonable in the options provided defendant by the police, particularly given the fact the arrest occurred at 3:00 a.m. The departmental rule does not say the vehicle must be "impounded, towed or otherwise cared for," which might support the majority's interpretation. This does state the vehicle must "be *either* impounded *and* towed or otherwise cared for," which suggests the two options must be given but that the remaining language is merely present to provide flexibility in unusual circumstances.

**B. Impoundment Colloquy.** Furthermore, the majority has placed an ill-conceived requirement on law enforcement officers which is patently absurd in this context by apparently creating new law which expands the duty the arresting officer owes to the arrestee. The majority's holding opens Pandora's box in that the arresting officer and the arrested operator can enter into prolonged bickering over the disposition of the vehicle, which could result in undue delays. It is not difficult to imagine a scenario where an arrestee, after being given the three choices, opts for the obvious choice of making an alternative disposition of the vehicle.

Suppose the arrestee attempts to contact a family member but is unable to do so. Does the officer now have to allow the arrestee to make additional calls? Or, what if the arrestee is able to contact a family member who promises to be at the scene shortly, but does not show up when expected. How long must the officer wait? Should another family member or friend be called? Should the police just tow the vehicle? I cannot see the merit in requiring the arresting officer to be subjected to such unwarranted waiting periods when prior law allowed the arresting officer the necessary discretion to provide for prompt disposition of the vehicle.

The majority reads the department's rule not only as requiring that the towing or impounding options be provided, but the *officer* must also undertake a colloquy with the arrestee to determine if an alternative disposition of the vehicle can be made. I believe a more common-sense approach and a better-reasoned interpretation of the rule would be that the police should only give the two options and if, and only if, the arrestee *asks* to make alternative arrangements and if such arrangements are reasonable under the circumstances, then the officer must provide for alternative disposition of the vehicle as in the *Goodrich* situation.

The defendant did not suggest another manner in which to dispose of the vehicle nor is there any reason to believe it would have been reasonable even if he did make such a suggestion. In any event, defendant consented to one of the options which satisfied the departmental policy.

Defendant also claimed he should have been able to sign a waiver of liability form or verbally release the police from liability because he was only in custody for six hours. While waiver techniques have been used, *Schwasta v. United States,* 392 A.2d 1071 (D.C.App.1978); *Miller v. State,* 403 So.2d 1307 (Fla.1981); *Gordon v. State,* 368 So.2d 59 (Fla.Dist.Ct.App.1979), this is

not the law in Iowa and only with hindsight could one know defendant would be in custody for six hours. I do not find the police's decision not to obtain a waiver of liability unreasonable.

Because I find the options as given and the police's decision to impound the automobile was reasonable, I turn to the scope of the inventory.

## II.

The defendant contended the scope of the inventory search was underinclusive and overinclusive in relationship to the fourth amendment dictates so as to infer the police search was a sham or pretext.

**A. Underinclusive.** Defendant claimed the following items were in the automobile, but not inventoried:

Hood
1. Quart of motor oil
2. Partial quart of transmission fluid
3. Partial container of brake fluid
4. Grease rag
5. Can opener

Trunk
1. Inflated spare tire
2. Deflated tire
3. Jack and handle
4. Gallon of antifreeze
5. CB antenna and attached coax

Back Seat
1. Psychology textbook
2. Hammer
3. Phillips screwdriver
4. Ratchet and socket
5. Empty beverage cans
6. Sandwich bags
7. Two loaves of bread
8. Empty food containers
9. Empty milk cartons

Front Seat, Dash, and Glove Compartment
1. Money
2. Employee identification badge
3. Two safety pins
4. CB microphone holder
5. Nail clippers
6. Beverage container
7. Comb
8. Hardee's Trivia Tickets
9. Bank checkbook
10. Bank savings book
11. Car registration
12. Car insurance policy
13. Personal letters and photographs
14. Paycheck stubs
15. Equipment manual

Front Seat, Dash, and Glove Compartment
16. "Fake" handcuffs
17. Ring
18. Plastic pen top
19. Wrist watch

The police's inventory report did contain the following items:

Front Seat
1. Brown case with 22 8-track tapes
2. Red case with 9 8-track tapes
3. Mouth organ
4. Hair brush
5. 2 8-track tapes

Glove Box
1. Comtrex plastic bottle containing marijuana seeds—seized
2. Pink-topped metal container with small amount of marijuana—seized
3. Black jewelry box with various jewelry items
4. Sharp calculator
5. Leather thong alligator roach clip with residue—seized

Back Seat
1. Yellow jumper cables
2. Styrofoam coolers
3. White sack of clothes
4. Basket of clothes
5. Stereo speaker
6. Black shoes
7. Vinyl overnight bag
8. 1 8-track tape
9. 2 prescription medicine bottles—seized

Trunk
1. Toolbox with tools
2. Cobra CB radio 19 × Ser. #2099928

There was disputed testimony at trial as to whether the items claimed by the defendant which did not appear in the police inventory report were actually in the vehicle. The police testified that items found in the trunk are not usually listed. I find that failure to list these items or items alleged to be under the hood does not negate the legitimacy of the inventory. One court addressed this issue where the defendant contended:

[T]he inventory was invalid because a complete listing of the contents of the vehicle was not made. The officers used a checklist on which they noted the presence of numerous items commonly found in an automobile, but did not include a suitcase and some clothing found in the car. While we agree that this procedure fails to fully effectuate the interests sought to be protected by an inventory, we hold that in the circumstances of this

case, where consent was given to open the trunk and the illegal item was immediately apparent to the investigating officer, failure to list completely the contents of the vehicle does not invalidate the inventory. However, the police department is well advised to closely examine existing caretaking procedures to insure that they comply with the rationale underlying their use.

*United States v. Hall,* 868 F.2d 917, 922 (5th Cir.1978).

As to items alleged to be in the car, I find that whether or not such items existed is not crucial to the outcome of this case. The police conceded a plastic pen top, handcuffs, food containers, and cans existed, but were omitted from the report. While I recognize the better police procedure is to list *all* items, I cannot find that failure to list these items of questionable value was unreasonable. Although failure to report the jewelry in the black box because it was thought to be of questionable value is not the best police practice, it does not make the search *per se* unreasonable. I find the inventory report was reasonably detailed and substantial compliance with police operating procedures existed so as to satisfy my inquiry on this matter.

**B. Overinclusive.** The most troublesome aspect of the search is raised on the overinclusiveness of the search. A search of a locked trunk by the police was approved of in *Roth,* 305 N.W.2d at 506, and there is no reason why a locked glove compartment should receive any different treatment. *See People v. Godwin,* 94 Mich.App. 286, 289, 288 N.W.2d 354, 355 (1979) (inventory search of vehicle's locked glove compartment was reasonable); *see also Opperman,* 428 U.S. at 367, 96 S.Ct. at 3095, 49 L.Ed.2d at 1003 (unlocked glove compartment).

Defendant challenged the authority of the police to open a closed plastic container which was supposed to contain medication to search for contraband and also to search a tin box which contained an alligator roach clip. The record indicates that an officer shook the bottle and it did not appear to

contain medicine, so he thought the container might instead have valuables inside. A similar rationale for searching the box, i.e., that valuables might be found therein, was offered.

The Iowa Supreme Court has recognized authority providing that the prohibition against invasion of one's privacy:

[E]xtends not just to locked suitcases in car trunks but to all closed or sealed containers, locked or unlocked found within the vehicle.

In recognizing that there is a greater expectation of privacy in closed or sealed containers found inside a vehicle than there is in a vehicle itself, we are balancing the need of the government (here, those relating to inventory searches) against the right of people to be free of warrantless intrusions into their personal effects. The balance tips in favor of the privacy of personal effects because the purpose of an inventory can be adequately served by inventorying a container as a closed unit. It is thereby secure from theft, and exposure to claims of loss is reduced. *But see: State v. McDougal,* 68 Wis.2d at 415–16, 228 N.W.2d 671 (R. Hansen, J., dissenting). Therefore, in conducting an inventory search of a vehicle, police officials may not open or search the contents of closed containers which could alternatively be removed from the vehicle and inventoried as a unit.

*Roth,* 305 N.W.2d at 507 (quoting *State v. Prober,* 98 Wis.2d 345, 355–56, 297 N.W.2d 1, 7 (1980)).

The court held in *Roth* that a police seizure of marijuana found in a brown paper bag in a locked trunk of an impounded automobile was legal because the reasonable expectation of privacy did not extend this far. *Id.* at 507–08.

In addition, defendant directed this court to persuasive authority provided in *State v. Jewell,* 338 So.2d 633, 638–40 (La.1976), where the court stated:

An essential requirement to a valid inventory search is that the police must have acted in good faith in conducting

the inventory, and must not have used the inventory procedure as a subterfuge for a warrantless search. It has therefore been held that where the conduct of the police was inconsistent with its contention that the search was conducted for inventory purposes, the search was unlawful.

Another essential prerequisite to valid inventory search is that the police must have taken lawful custody of the vehicle in the first instance. It has therefore been held that where the circumstances show that the police had no authority to impound the vehicle, or that police custodial care of the vehicle was not necessary, the inventory search was unlawful. * * * [L]awful custody of an impounded vehicle does not of itself dispense with the constitutional requirement of reasonableness in regard to search thereafter made of such vehicle.

\* \* \* \* \* \*

While the car was indeed in police custody at the time, the on-the-spot search by the arresting officers does not resemble the formal inventory for storage purposes, after a vehicle has been actually impounded, of the federal vehicle-inventory decisions above cited.

No evidence in the record shows, for instance, that standard inventory forms were completed and kept for future reference (showing presence or absence of valuables), nor that a place of 'safekeeping for valuables so secured was maintained. The present search seems solely to have been for the purpose of obtaining incriminating contents, and all objects seized by the search were turned over to the laboratory for analysis and placed in evidence envelopes.

Unlike in the cited federal decisions, the car was not formally impounded within the custody of an official storage agency at the time. The record does not even clearly reflect that the tow truck had been called before the search began.

\* \* \* \* \* \*

However, if the purpose of the search is truly only to inventory the contents of the vehicle and to safeguard them during official storage, an indicia that such is the real purpose of the search is to consult with the owner or custodian of the vehicle when he is present at the time of the search. The cited federal decisions concerned inventory searches where the owner of the vehicle was absent or unknown, or where it was not practicable to consult with him at the time of the routine storage inventoiy.

Additionally, the contraband was inside of an Excedrin bottle, an unlikely place for anything of value which an owner could complain was lost or stolen. The opening of the bottle and inspecting its contents is inconsistent with the purpose and permissible scope of a true inventory search. The Excedrin bottle was itself found inside an ashtray on the dash of the car, also an unlikely place for an owner to keep anything of value.

In summary, the facts surrounding the search which produced the PCP support a conclusion that the police officers were searching for incriminating evidence, and that they were not collecting personal items found in the car which might be stolen and thus needed to be inventoried either for the police department's protection or to safeguard the defendant's property.

*Jewell* is distinguishable from our facts. The police in this case had impounded the vehicle and did use the standard inventory form and recorded numerous, albeit not all, items on the report. While similar containers could have been inventoried as a unit, the fact that the police claimed the bottle was searched because they thought valuables might be contained therein added a further dimension to the analysis which the majority overlooked. Pursuant to *Roth*, after balancing the expectation to privacy of items contained in an opaque plastic bottle and a tin box against the explanation for the search, I am unable to conclude the scope of this search was unreasonable. No doubt it is a close question, but I cannot find the police failed to act in good faith, so as to enable me to find that the search was

a sham. I would affirm the trial court because the impoundment and subsequent inventory of the vehicle was not merely a pretext for a warrantless search to find contraband.