STATE of Iowa, Appellee,

v.

Lornell JACKSON, Appellant.

No. 94–1592.

Supreme Court of Iowa.

Jan. 17, 1996.

Tomas Rodriguez, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, and Denver D. Dillard, County Attorney, for appellee.

Considered by McGIVERIN, C.J., and CARTER, NEUMAN, SNELL, and TERNUS, JJ.

McGIVERIN, Chief Justice.

Defendant, Lornell Jackson, appeals from the judgment entered upon his conviction of possession of a controlled substance with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(6) (1993). He contends the district court erred in concluding the search of his vehicle did not exceed the permissible scope of an inventory search and, consequently, in denying his motion to suppress various items seized from the vehicle. Upon our de novo review, we conclude that the inventory search was valid, and thus affirm the district court's judgment.

I. *Background facts and proceedings.* On July 29, 1993 at about 11:10 p.m., Iowa state patrol trooper Darin Snedden observed a Pontiac automobile parked on the shoulder of highway 30, one mile west of interstate 380 in Cedar Rapids, with its hood up and hazard lights flashing. Trooper Snedden stopped to offer assistance and discovered the vehicle was owned by defendant Lornell Jackson. He approached the car and asked Jackson if he needed help. Jackson informed Snedden that his car had overheated and asked if he could telephone his girlfriend for a ride. The trooper complied with Jackson's request and also ran a routine check for outstanding arrest warrants against Jackson. During the routine warrant check, trooper Snedden discovered two outstanding warrants for Jackson, one for false imprisonment and the other for a weapons charge.

Upon learning of the outstanding warrants, Snedden called for backup and Iowa state patrol trooper Todd Jones arrived on the scene. After verifying the warrants, trooper Snedden advised Jackson he was under arrest and placed him into custody.

Shortly after the arrest, Jackson's girlfriend arrived on the scene. Because no driver was present to move Jackson's car, which in any event appeared inoperable, trooper Jones advised trooper Snedden that he would have the car impounded. Trooper Jones testified the reason for impounding defendant's car was because the vehicle was disabled, the defendant was placed under arrest, and parking was not allowed on the shoulder of the highway. Neither Jackson nor his girlfriend made any requests to the troopers concerning the handling of the car.

Trooper Snedden left the scene to take the defendant to the Linn County jail. Soon thereafter, trooper Jones proceeded to inventory the car's contents, guided by a highway patrol department standardized vehicle impoundment form. Jones stated that the standardized inventory criteria required him to inventory all items found in an impounded vehicle, including items located within closed containers.

Beginning the inventory search in the trunk of defendant Jackson's impounded vehicle, trooper Jones found and examined some cleaning materials to confirm that the items were what they appeared to be. One item he discovered was a simulated or replica "Ajax" can. Upon examination, the Ajax can was actually a safe container commonly used to store valuables, such as jewelry or money. When trooper Jones twisted the can, it came apart revealing an empty cavity. He inventoried the Ajax safe container, placed it to the side, and continued the inventory.

While still searching in the vehicle's trunk, trooper Jones opened a suitcase to inventory its contents. In the suitcase, he found a second safe container designed to look like a "Stroh's" beer can. Jones twisted off the top of the safe container and found a roll of twenty-eight $100 bills inside. Also inside the suitcase, trooper Jones found a rolled-up newspaper. He unrolled the newspaper and inside found a digital scale coated with a white powdery substance. After trooper Jones discovered the cash and scale in the trunk of defendant Jackson's vehicle, he suspended the inventory search and requested that the Linn County canine unit arrive on the scene in order to search the car.

The canine unit's drug dog went over defendant Jackson's vehicle but did not alert the troopers to anything in the car. Jones also had trooper Snedden return to the scene as he wanted witnesses present prior to continuing the inventory search.

After the canine unit concluded its search, trooper Jones continued the inventory search in the interior of the defendant's car. In the passenger area, he found a plastic bag containing a can labelled "Fix–A–Flat." Upon examination, the can was actually a safe container, as were the "Ajax" and "Stroh's" containers that trooper Jones found and inventoried during the first part of his inventory search. He twisted the Fix–A–Flat safe container and the bottom came off, revealing a spoon and five individually wrapped plastic bags, each containing a white powdery substance. Jones recorded the items and completed the inventory search.

After trooper Jones completed the inventory search, trooper Snedden sealed the defendant's car and called for a tow truck. Troopers Jones and Snedden performed drug field tests on the seized white powdery substances and marked, as evidence, the plastic bags, twenty-eight $100 bills, and digital scale.

The State criminalistic laboratory analyzed the white powdery substances seized by the troopers from defendant's vehicle and concluded the substances contained nearly sixty grams of cocaine and heroin, which are controlled substances under Iowa law. *See* Iowa Code § 124.401.

The State charged defendant Jackson with the crime of possession of a controlled substance with the intent to deliver, a class C felony. *See* Iowa Code § 124.401(1)(c)(6). Defendant pled not guilty to the charge and the case was scheduled for trial.

Prior to trial, defendant filed a motion to suppress the "contraband, cash, and digital scale" that trooper Jones discovered during his inventory search of defendant's vehicle. *See* Iowa R.Crim.P. 10(2)(c), 11(1). In his motion, defendant claimed the inventory search violated his constitutional rights because there was no probable cause to justify the search of his car or the seizure of the evidence, the search was not consensual, and the evidence seized was not in plain view.

After a hearing on defendant's motion to suppress, the district court overruled the motion. The court found trooper Jones' inventory search of defendant Jackson's vehicle did not violate the defendant's constitutional rights because the inventory search was reasonable, as it was conducted pursuant to the patrol department's standardized inventory criteria.

The case proceeded to a jury trial. The challenged items were admitted in evidence at trial. At the close of the State's case, defendant renewed his earlier motion to suppress. This motion, also, was overruled.

The jury convicted Jackson as charged, and the court entered judgment and sentence on the conviction. *See* Iowa Code § 902.9(3).

Jackson appeals his conviction, claiming the district court erred in overruling his motion to suppress. He contends the search exceeded the permissible limits of an inventory search of his vehicle and thus his rights under the Fourth Amendment to the United States Constitution were violated.

II. *Standard of Review.* Because defendant Jackson claims his constitutional rights were violated, we review the record de novo based upon the totality of the circumstances. *State v. Manna,* 534 N.W.2d 642, 643 (Iowa 1995); *State v. Cook,* 530 N.W.2d 728, 731 (Iowa 1995). In our review of the district court's ruling on defendant's motion to suppress, we consider both the evidence presented during the suppression hearing and that introduced at trial. *Cook,* 530 N.W.2d at 731.

III. *Validity of inventory search of defendant's vehicle.* Defendant contends that the district court erred in overruling his motion to suppress from evidence at trial the cocaine, heroin, money, and materials which trooper Jones seized from closed containers and elsewhere during the inventory search of his vehicle. He contends the seizure violated his rights under the Fourth Amendment to the United States Constitution in that the search of his vehicle exceeded the permissible scope of an inventory search.

Since we last addressed an issue concerning the permissible scope of an inventory search, *see State v. Roth,* 305 N.W.2d 501, 507–08 (Iowa), *cert. denied,* 454 U.S. 870, 102 S.Ct. 338, 70 L.Ed.2d 174 (1981), the United States Supreme Court has rendered two decisions which directly control the present case. *See Florida v. Wells,* 495 U.S. 1, 4–5, 110 S.Ct. 1632, 1635, 109 L.Ed.2d 1, 6–7 (1990); *Colorado v. Bertine,* 479 U.S. 367, 374–75, 107 S.Ct. 738, 742–43, 93 L.Ed.2d 739, 747–48 (1987). We find these cases authorize the type of inventory search performed by trooper Jones pursuant to the highway patrol department's standardized inventory criteria.

■ 1. The Fourth Amendment to the United States Constitution provides in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause...." U.S. Const. amend. IV. Searches and seizures conducted by governmental officials without prior court approval are per se unreasonable unless they fall within one of the few exceptions to the Fourth Amendment's warrant requirement. *See Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Cook,* 530 N.W.2d at 731. An inventory search is one such exception. *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745.

■ This is not a warrantless, *probable cause* automobile search case. *See, e.g., Chambers v. Maroney,* 399 U.S. 42, 47–48, 90 S.Ct. 1975, 1979, 26 L.Ed.2d 419, 426 (1970). Rather, this case involves a challenge to the scope of a state trooper's inventory search conducted incident to the impoundment of defendant's vehicle. *See, e.g., Wells,* 495 U.S. at 4–5, 110 S.Ct. at 1635, 109 L.Ed.2d at 6–7; *Bertine,* 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745; *South Dakota v. Opperman,* 428 U.S. 364, 375–76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000, 1009 (1976); *Roth,* 305 N.W.2d at 507–08. Inventory searches are a "well-defined exception" to the warrant requirement of the Fourth Amendment, have nothing to do with the concept of probable cause,

and are unrelated to the formal criminal investigatory process. *See Bertine,* 479 U.S. at 371, 107 S.Ct. at 741, 93 L.Ed.2d at 745; *see also* Stephen A. Saltzburg & Daniel J. Capra, *American Criminal Procedure* 313 (4th ed. 1992).

■ Inventory searches are justified for three "safe keeping" purposes: (1) to protect the owner's property while the vehicle is in police custody; (2) to protect the police officer who performs the inventory search against claims or disputes over the property; and (3) to protect the police officer from potential danger. *See Opperman,* 428 U.S. at 369, 96 S.Ct. at 3097, 49 L.Ed.2d at 1005; *State v. Kuster,* 353 N.W.2d 428, 431 (Iowa 1984); *see also Roth,* 305 N.W.2d at 504–05.

■ Before a valid inventory search can be conducted, however, the government official must first properly seize or impound the defendant's vehicle. *See Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009; *Kuster,* 353 N.W.2d at 431; *State v. Edgington,* 487 N.W.2d 675, 679 (Iowa 1992). Defendant in the present case does not contest the legal validity of the underlying impoundment, and we find, therefore, that the underlying impoundment was constitutionally valid. *See Opperman,* 428 U.S. at 375, 96 S.Ct. at 3100, 49 L.Ed.2d at 1009; *Kuster,* 353 N.W.2d at 430–31. This finding is significant because the legal validity of a challenged inventory search depends upon the lawfulness of the underlying impoundment. *Kuster,* 353 N.W.2d at 431.

2. Next, we consider defendant's argument that the district court erred by failing to suppress the evidence obtained in alleged violation of the limitations on inventory searches. Defendant concedes that trooper Jones had the authority to open his vehicle's trunk and glove compartment. *See Roth,* 305 N.W.2d at 506–07. His sole argument is that trooper Jones exceeded the scope of a valid inventory search by opening defendant's suitcase and other closed containers in the trunk and passenger area of his vehicle.

It appears defendant rests his argument on the premise that the inventory *could* have been performed in a less intrusive manner because trooper Jones could have adequately

inventoried the contents of his vehicle without opening all closed containers. This "less intrusive manner" argument has been flatly rejected as a legal standard by the Court, and we do the same here. *See Bertine*, 479 U.S. at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747; *Illinois v. Lafayette*, 462 U.S. 640, 647, 103 S.Ct. 2605, 2610, 77 L.Ed.2d 65, 72 (1983).

Defendant relies primarily on a 1986 decision of our court of appeals, pre-dating the Court's decisions in *Bertine* and *Wells*, in which that court held that the opening of a "Comtrex" bottle and a tin can during an inventory search of a vehicle was unconstitutional. *See State v. Casteel*, 392 N.W.2d 168, 173 (Iowa App.1986). In *Casteel*, the court of appeals employed a type of "balancing test," between a defendant's expectation of privacy and the "safe keeping" purpose of the inventory, to assess the validity of the inventory search. *Id.* at 172–73. That test was expressly rejected by the Court in *Bertine*. *See Bertine*, 479 U.S. at 374–75, 107 S.Ct. at 742–43, 93 L.Ed.2d at 747. Therefore, the holding and rationale of the *Casteel* case no longer assist the defendant.

■ 3. We next apply the recent case law to the undisputed facts here to assess the validity of the inventory search. We are bound by the Court's interpretation of the federal constitution, *see State v. James*, 393 N.W.2d 465, 466 (Iowa 1986), and we cannot interpret the Fourth Amendment more narrowly than has the Court. *State v. Olsen*, 293 N.W.2d 216, 219 (Iowa), *cert. denied*, 449 U.S. 993, 101 S.Ct. 530, 66 L.Ed.2d 290 (1980). Defendant raises no claim under the Iowa Constitution.

In overruling the defendant's motion to suppress, the district court found

[trooper Jones] acted in good faith in conducting the inventory [search] and the inventory procedure was not used as a subterfuge for a warrantless search.

. . . .

The [inventory] search was conducted pursuant to standard procedures which removed any inference that the officers were attempting to discover evidence of crimes. The money and drugs found by the troop-

ers were inside containers commonly purchased at many stores for the keeping of valuables and it was reasonable for them to assume that valuables may very well have been contained within them. The officers used the standard inventory procedures and recorded numerous items on the report.

■ The district court found the testimony of both troopers Jones and Snedden credible, and we give deference to such findings. *See State v. Evans*, 495 N.W.2d 760, 762 (Iowa 1993). We believe, in our de novo review of the record, there is ample, uncontroverted testimony that the patrol department in the present case had standardized inventory criteria that included opening all locked and unlocked containers and inventorying the containers' contents. Furthermore, there is uncontroverted evidence that trooper Jones administered the department's standardized criteria in good faith when he inventoried the property located in defendant's vehicle. This is all the law currently requires for a legally valid inventory search. *See Wells*, 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6; *Bertine*, 479 U.S. at 374, 107 S.Ct. at 742, 93 L.Ed.2d at 747.

Defendant does not contend that standardized criteria did not exist or that criteria were not followed by trooper Jones during his inventory search of defendant's vehicle. Therefore, defendant's argument is fatally flawed. Furthermore, the district court found the inventory search in the present case was conducted in good faith, and we agree. The search was clearly not one made as a "ruse for a general rummaging in order to discover incriminating evidence," as prohibited by the Court. *See Wells*, 495 U.S. at 4, 110 S.Ct. at 1635, 109 L.Ed.2d at 6.

Finally, we note that any language in *Roth* contrary to the rationale we employ today is no longer controlling. *See Roth*, 305 N.W.2d at 507. *Roth* was decided prior to the *Bertine* and *Wells* cases on which we rely in the present case.

IV. *Disposition.* We conclude the district court properly overruled the defendant's motion to suppress the controlled substances, materials, and money found during the inventory search of defendant's vehicle. There-

fore, we affirm the court's judgment entered upon defendant's conviction.

**AFFIRMED.**