**IN THE COURT OF APPEALS OF IOWA**

No. 14-0051
Filed March 11, 2015

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**FRANCO ALEXANDER ARELLANO,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Johnson County, Deborah F. Minot, District Associate Judge.

Franco Arellano appeals from his conviction for possession of marijuana. **AFFIRMED.**

Christopher J. Foster of Foster Law Office, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Janet Lyness, County Attorney, and Rachel Zimmerman-Smith, Assistant County Attorney, for appellee.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**DOYLE, J.**

Franco Arellano appeals from his conviction for possession of marijuana, challenging an impound and inventory search of his vehicle, in which he was a passenger, and claiming any evidence gained as a result of the search should have been suppressed. Because the search of the vehicle was reasonable under the impound and inventory exception to the warrant requirement, we affirm the suppression ruling.

## I.  *Background Facts and Proceedings*

At approximately 2:00 a.m. on January 3, 2013, Franco Arellano was a passenger in the backseat of his Honda Accord near downtown Iowa City when it was stopped for an expired registration. The driver of the car was unable to produce proof of valid insurance. The officer issued a citation for one of the violations and a warning for the other. The car's occupants were informed the car was going to be impounded and towed. Officers offered Arellano and the other occupants of the car an opportunity remove any property they wished from the car. No one retrieved any property before leaving the scene.

Officers inventoried the contents of the car before it was towed. In the backseat, they found a backpack. Upon opening the backpack, the officers discovered a grinder, a scale, small baggies, 9.24 grams of marijuana, and mail addressed to Arellano. The State filed a trial information charging Arellano with possession of marijuana, in violation of Iowa Code sections 124.401(5) and 124.204(4)(m) (2013), a serious misdemeanor.

Arellano filed a motion to suppress, alleging the officers' search of the car—based on the impound and inventory exception to the warrant

requirement—violated his rights against unreasonable search and seizure under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Iowa Constitution. Three Iowa City police officers testified at the suppression hearing; the officer who conducted the stop and the two officers who conducted the search. The district court entered a ruling denying the motion to suppress.

Arellano stipulated to a trial on the minutes of testimony. The district court found him guilty as charged, entered judgment, and imposed a two-day jail sentence and a fine of $315. Arellano appeals.

## II. Scope and Standard of Review

We review this constitutional claim de novo; that is, we make an independent evaluation of the totality of the circumstances as shown by the entire record. *See State v. Allensworth*, 748 N.W.2d 789, 792 (Iowa 2008). A person is protected against unreasonable searches and seizures, and therefore, a search conducted without prior court approval is per se unreasonable unless it falls into a category that is an exception to the Fourth Amendment's warrant requirement. *Id.*

## III. Discussion

Arellano contends the district court erred in denying his motion to suppress, asserting the search was unreasonable under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution.[1]

---

[1] Arellano refers to the "greater protections" provided by the Iowa Constitution, but makes no specific argument relating to how a more stringent standard should be used in this case. Consequently, we will confine our analysis to the grounds raised in his appeal. *See Reilly v. Iowa Dist. Ct.*, 783 N.W.2d 490, 494 (Iowa 2010) (applying the

Specifically, Arellano claims the State "failed to meet its burden" of proving that the police had a "reasonable standardized procedure" for impounding vehicles and conducting inventory searches and "that the procedure was followed," and that any evidence obtained in the search should have been suppressed.

We first address Arellano's standing to challenge the impound and search. He was a passenger in the car when it was stopped. A passenger with neither a possessory nor a property interest in a vehicle does not have a legitimate expectation of privacy in the vehicle. *Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978); *State v. Halliburton*, 539 N.W.2d 339, 342 (Iowa 1995); *see also State v. Nucaro*, 614 N.W.2d 856, 859 (Iowa Ct. App. 2000); *State v. Hungerford*, 311 N.W.2d 699, 700 (Iowa Ct. App. 1981). Arellano makes no assertion in any court filing that he owned the car he was riding in as a passenger. All his filings are silent on the matter. But, the State asserts Arellano was the owner of the car. Although the record is not as crystal clear as we would prefer, we accept the State's assertion.

The minutes of testimony say nothing about ownership of the car. At the suppression hearing, the court stated to Arellano's counsel, "[W]hat I'm hearing you tell me is that there's no dispute that this vehicle was not owned by [Arellano]; is that correct?" Arellano's counsel responded, "That is correct, Your Honor." The court also confirmed that Arellano was a passenger in the car and not the driver. Iowa City police Officer Hektoen testified during cross-examination at the suppression hearing:

---

general principles of the federal constitution where the defendant had "not advanced a [different] standard for interpreting the due process clause under the Iowa Constitution").

Q. And do you recall if the driver of the vehicle was the owner of the vehicle?" A. "I don't think he was."
Q. And do you recall if the owner of the vehicle was at the scene?
A. I believe it's your client [Arellano].
Q. That's your recollection? . . . That my client [Arellano] was the owner of the vehicle? A. That's my recollection, yes.

Inexplicably, the vehicle owner information box provided on the police impound report was left blank. The district court's ruling denying the motion to suppress is silent on the matter of the car's owner. The district court's ruling regarding the stipulated trial is also silent on the matter. As stated above, Arellano's appellate brief is silent on the matter. But, the State asserts in its appellate brief that Arellano was owner of the car. That assertion is supported by the unrebutted police officer's sworn testimony. We therefore conclude the record supports a finding that Arellano owned the car. As owner of the car, he has standing to challenge the impoundment and search of his car.

The Fourth Amendment of the United States Constitution protects against *unreasonable* searches and seizures. *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973). The State had the burden to prove by a preponderance of the evidence that the warrantless search falls within one of the recognized exceptions. *See State v. Watts*, 801 N.W.2d 845, 850 (Iowa 2011). One well-recognized exception to the warrant clause is a vehicle inventory search. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); State v. *Huisman*, 544 N.W.2d 433, 436 (Iowa 1996). This exception responds to the practical problems arising when police remove a vehicle's operator and are then left to care for that vehicle. In such circumstances, police act in a caretaking capacity rather than as criminal

investigators. *State v. Jackson*, 542 N.W.2d 842, 845 (Iowa 1996); *see South Dakota v. Opperman*, 428 U.S. 364, 368 (1976).

"The legality of an inventory search depends on two overlapping inquiries: the validity of the impoundment and the scope of the inventory. If either is unreasonable, the search violates the Fourth Amendment and evidence discovered in the search must be suppressed." *Huisman*, 544 N.W.2d at 436. "Before a valid inventory search can be conducted, however, the government official must first properly seize or impound the defendant's vehicle." *State v. Jackson*, 542 N.W.2d 842, 845 (Iowa 1996). The impoundment is reasonable if there are "reasonable standardized procedures and a purpose other than the investigation of criminal activity." *Huisman*, 544 N.W.2d at 437.

In the context of an inventory search, the State had to produce evidence that the impoundment and the inventory search procedures were in place and that law enforcement complied with those procedures. *United States v. Kennedy*, 427 F.3d 1136, 1144 (8th Cir. 2005). Although presumably readily available, the State failed to introduce the written impound/inventory policy utilized by the Iowa City police department.[2] Nevertheless, failure to introduce the written policy is not necessarily fatal to the State's case. *See People v. Gipson*, 786 N.E.2d 540, 544-46 (Ill. 2003) (an officer's testimony describing the standard procedure can be sufficient).

At the suppression hearing, the State presented evidence to support its assertion the impound and inventory-search procedures were in place and that

---

[2] It would be better for a prosecutor seeking to prove the existence of a written policy to put a copy into evidence. *See People v. Walker*, 980 N.E.2d 937, 940 (N.Y. 2012)

the officers complied with those procedures. Officer Hektoen testified he stopped the vehicle because its license plates were expired. Officer Kelly identified "General Order 99-01" as the departmental policy providing for the impoundment of uninsured vehicles, stating "if the driver is unable to prove they have valid insurance for the vehicle, then the vehicle may be impounded for community safety issues." The officer stated the driver was unable to produce proof of valid insurance, and that he issued the driver a warning and citation. The vehicle's occupants were informed the car would be towed and were an opportunity to retrieve anything they wanted from the car. The State presented sufficient evidence establishing a reasonable standardized impoundment procedure and sufficient evidence that the procedure was followed. *See State v. Bitker*, No. 13-0520, 2014 WL 468228, at *3 (Iowa Ct. App. Feb. 5, 2014) ("Because our statute [section 321.20B(4)(a)(4)] allows for impoundment where a driver cannot produce proof of insurance, we find that when viewed objectively, the officer was allowed to impound Bitker's vehicle."); *cf. State v. Baylor*, No. 14-0390, 2014 WL 7343738, at *3 (Iowa Ct. App. Dec. 24, 2014) (reversing the district court's denial of the defendant's motion to suppress when the State failed to provide "any information in the record indicating when and how law enforcement in Walcott makes the decision to impound vehicles"). In any event, Arellano agreed at the suppression hearing "that the only issue here is whether there was an appropriate inventory search."

So, we move on to the inventory search issue. Officers Erickson and Kelly testified that General Order number 99-01 also covered the procedure for conducting inventory searches. Officer Erickson testified,

> Basically our General Orders state that any vehicle that is—that shows—that fails to show proof of insurance then has the right to be taken off the road. The procedure for that is to, again, ask the owner or occupants to get anything of value out of that vehicle and take with them at that time, and then we do a full search around the vehicle for any issues with the vehicle, dents, scratches, damages, and then also a search inside the vehicle for any valuables left inside there.

Officer Erickson testified he was required to fill out a report after performing an inventory search. Specifically, he said,

> We have a tow sheet, tow slip that we have to write down all the vehicle information as well as any issues with the vehicle, scratches, dents, anything like that, as well as any valuables that were inside the vehicle.

*See, e.g.*, *Jackson*, 542 N.W.2d at 845 ("Inventory searches are justified for three 'safe keeping' purposes: (1) to protect the owner's property while the vehicle is in police custody; (2) to protect the police officer who performs the inventory search against claims or disputes over the property; and (3) to protect the police officer from potential danger."). Officer Erickson's impound report of the vehicle was admitted into evidence.

Although Officer Hektoen testified he noticed Arellano "was making some furtive movements into what [Hektoen] later discovered was the area of a black backpack seated next to [Arellano]," no evidence was presented relating to the presence of an investigatory motive by the officers. *See, e.g.*, *United States v. Agofsky*, 20 F.3d 866, 873 (8th Cir. 1994) ("We decline to speculate about Sergeant Russell's subjective intent. The presence of an investigatory motive, even if proven, does not invalidate an otherwise lawful inventory search.").

In considering this evidence and ruling on Arellano's motion to suppress, the district court stated:

The only issue is whether the warrantless search of the vehicle was lawful. Since the stop of the vehicle was justified, and the driver could not produce proof of insurance, the Court finds that the police were within their authority in impounding the vehicle. The testimony of all of the officers, particularly Officer Kelly, established that the search of the vehicle was conducted pursuant to standard impound/inventory procedures established by the ICPD. Further, the testimony established that the purposes of the search were to protect community from uninsured vehicles, to protect property rights, and to protect the police department from liability, not for any investigative purpose. Thus, the Court finds that the search of vehicle was an inventory search of an impounded vehicle that falls squarely within a well-recognized exception to the warrant requirement.

We agree.

On our de novo review of these facts and circumstances, we conclude the State provided the necessary evidence to support its claim the inventory-search exception applied in this case. *See State v. Cowan*, No. 10-2100, 2011 WL 5867064, at *5 (Iowa Ct. App. Nov. 23, 2011) ("The officers' impoundment of Cowan's car followed the standardized criteria established by their departments. The inventory search they conducted before the tow truck arrived was reasonable in its scope.").

Lastly, we consider Arellano's argument that in the absence of evidence of any standardized procedure permitting officers to search inside closed containers, "the officers were not permitted to open or search any closed containers within the vehicle without running afoul of Arellano's constitutional protections." In *State v. Jackson*, 542 N.W.2d 842, 845-46 (Iowa 1996), our supreme court considered the issue of opening closed containers (a suitcase) during an inventory search. It held that in evaluating the validity of an inventory search, our law requires an officer to execute the search pursuant to

standardized criteria. *Jackson*, 542 N.W.2d at 846. Here, this discrete, particularized argument was not specifically raised before the district court; we therefore do not consider the issue for the first time on appeal. *See State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999) ("Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us [on appeal] that was not first sung in trial court."). Our error preservation rules are not legal bramble bush that serve no purpose other than ensnaring unwitting litigants. *See State v. Tidwell*, No. 13–0180, 2013 WL 6405367, at *2 (Iowa Ct. App. Dec. 5, 2013). Our error preservation rules preserve judicial resources by allowing the district court the first opportunity to address an issue. It would be unfair to fault a district court on an issue it never had the opportunity to consider. *See Otterberg v. Farm Bureau Mut. Ins. Co.*, 696 N.W.2d 24, 28 (Iowa 2005); *DeVoss v. State*, 648 N.W.2d 56, 60 (Iowa 2002). Thus, under our error preservation rules, an issue must ordinarily be raised in and decided by the district court before we will address it on appeal. *See Stammeyer v. Div. of Narcotics Enforcement*, 721 N.W.2d 541, 548 (Iowa 2006).

Accordingly, we affirm the district court's ruling denying Arellano's motion to suppress.

**AFFIRMED.**

Vogel, P.J., concurs specially; McDonald, J., concurs.

**VOGEL, P.J.** (concurring specially)

A poor record can have a dramatic impact on appellate review. In this case, I only take exception with the majority's conclusion that Arellano owned the vehicle. Because, as the majority notes, the record is not "crystal clear" as to ownership, I would conclude Arellano does not have standing—that is, the right— to object to the search and subsequent impoundment of the vehicle in which he was merely a passenger. *See Alons v. Iowa Dist. Ct.*, 698 N.W.2d 858, 864(Iowa 2005) (clarifying "standing" as whether the party has a legally protected interest that has been invaded). If Arellano lacked that right in the district court, his appeal should be dismissed.

The facts are in conflict. While the police officer's recollection was that Arellano was the owner of the vehicle, Arellano's defense counsel made the exact opposite statement to the court. At the suppression hearing, the following exchange occurred:

> The Court: [W]hy does your client have standing to argue the issue about whether the plate was removed in proper order?
> [Defense Counsel]: Well, my client is stating to make an argument based on despite the fact that *there was someone else's citation* for lack of insurance, because the inventory—the search essentially showed a search of my client's possession. He is challenging under recent cases I believe—
> The Court: He has standing to challenge under Fourth Amendment cases. This isn't a Fourth Amendment case.
> . . . .
> The Court: I'll direct the State to call witnesses, but what I'm hearing you tell me is that *there's no dispute that this vehicle was not owned by the defendant*; is that correct?
> [Defense Counsel]: That is correct, Your Honor.
> The Court: There's no dispute that he was not the driver that night; that's undisputed?
> [Defense Counsel]: Correct, Your Honor.
> The Court: All right. So he was a passenger in the vehicle—
> [Defense Counsel]: Correct.

(Emphasis added.)

Although perhaps not as strong as a professional statement, I would nonetheless rely on counsel's direct answers to the court's questions, given these statements were never challenged nor corrected. *See State v. Brewer*, 247 N.W.2d 205, 212 (Iowa 1976) (describing a professional statement as a "technique, used as a matter of convenience and practical necessity, to establish a record of matters peculiarly within the knowledge of an attorney. In offering a professional statement an attorney pledges the honor of his profession and his personal integrity. It has the effect of an affidavit."). The statements by defense counsel to the court were that Arellano was not the owner of the vehicle. Consequently, I disagree with the majority only with respect to its conclusion that Arellano owned the car. However, because a passenger in a car does not have standing to challenge an impoundment and search of another's vehicle, I would conclude Arellano's appeal should be dismissed. *See Halliburton*, 539 N.W.2d at 342.

Notwithstanding this impediment to appellate review, as a precaution—that is, if Arellano's attorney misspoke and Arellano actually was the owner of the vehicle—it was appropriate for the majority to address Arellano's issues. To that end, I agree with the majority's analysis and conclusion that the district court properly denied Arellano's motion to suppress.