STATE of Iowa, Appellee,

v.

Tina M. BOWERS, Appellant.

No. 02–0021.

Supreme Court of Iowa.

Dec. 18, 2002.

Rehearing Denied Feb. 10, 2003.

Mark J. Neary of Neary Law Office, Muscatine, for appellant.

Thomas J. Miller, Attorney General, Kevin Cmelik, Assistant Attorney General, and Lee W. Beine, County Attorney, for appellee.

CARTER, Justice.

Defendant, Tina Bowers, appeals from convictions on four counts of second-degree sexual abuse in violation of Iowa Code sections 709.1 and 709.3 (2001). She urges that the district court erred in denying a motion to suppress her confession to police officers. She also asserts that her trial counsel provided ineffective assistance by failing to (1) request a bill of particulars, (2) object to evidence of similar crimes, (3) move for a directed verdict, and (4) object to statements by the prosecutor during closing arguments. After reviewing the record and considering the arguments presented, we affirm the judgment of the district court.

Defendant, Tina Bowers, is the mother of Zebidiah Holevoet, born on July 22, 1986. Defendant divorced Zebidiah's father, Cory Holevoet, when Zebidiah was five years of age. Zebidiah lived with his father until he was nine years of age, at which time he began to reside with defendant and her second husband, Gary Bowers.

Zebidiah testified that when he was ten years of age he and defendant were drinking wine coolers and began discussing sex. He claims that he performed oral sex on defendant, she performed oral sex on him, and then they engaged in sexual intercourse. About three days later, Zebidiah stated that he performed oral sex on Gary Bowers, Gary performed oral sex on him, and he again engaged in sexual intercourse with defendant.

Zebidiah testified that this type of sexual activity continued one to three times per week for approximately one year. Sometimes the sexual activity involved Zebidiah, Gary Bowers, and defendant, while other times it only involved Zebidiah and defendant. Zebidiah testified that he and de-

fendant engaged in sexual intercourse when Gary Bowers was not present on three or four occasions.

When Zebidiah was fourteen, he returned to his father's care. He told his father about the sexual activity he had participated in with Gary Bowers and defendant. Mr. Holevoet advised the Illinois Department of Human Services of the allegations, and a criminal investigation ensued.

Special agent Richard Rahn of the Iowa Department of Criminal Investigation was assigned to the case on May 22, 2001. Agent Rahn interviewed Zebidiah on May 25, 2001, tape recording the interview. Agent Rahn obtained a warrant to search the home of defendant and Gary Bowers. Several other officers assisted with the search of the home.

When the search began, no one was at home. Approximately thirty minutes later, defendant returned. Agent Rahn read the search warrant to her and asked if she would be willing to talk to him. Defendant consented to do so. Agent Rahn told defendant that he believed the continuing search would be disruptive to an interview at defendant's home. He suggested that they go to the Riverside Fire Department to conduct the interview. Agent Rahn drove defendant there in his unmarked squad car, and agent Matt George accompanied them.

Agent Rahn interviewed defendant alone, while agent George sat in an adjoining area out of defendant's view but trying to listen. The interview was not recorded. Agent Rahn initiated the interview by reading defendant her *Miranda* rights and getting a family history. About thirty minutes into the interview, defendant admitted to having sexual contact with Zebidiah. Defendant estimated that the sexual activity occurred approximately once per week, over a two- to six-month period.

Other factors that are relevant to the issues on appeal will be discussed in connection with our consideration of the legal issues presented.

## I. *Standard of Review.*

▇▇▇ Motions to suppress evidence obtained through an allegedly illegal interrogation necessarily implicate a possible violation of constitutional rights. *State v. Jackson,* 542 N.W.2d 842, 844 (Iowa 1996). Therefore, the record is reviewed de novo based upon a totality of the circumstances. *Id.* In such a review, the court considers both the evidence presented during the suppression hearing and that introduced at trial. *Id.*

## II. *The Motion to Suppress.*

▇▇▇ Defendant asserts that she was placed under custody at the time of her interrogation. Defendant further asserts that, although agent Rahn did inform her of her rights under *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694, 706 (1966), her waiver of those rights was involuntary. The State argues that defendant was not in custody during her interrogation, and even if she was, she voluntarily and intelligently waived her *Miranda* rights.

▇▇▇ For purposes of defendant's *Miranda* challenge to the use of her confession, we will assume that she was in custody when she was interrogated. To be admissible the responses of an uncounseled accused in custody must have been voluntary in fact and must have followed a knowing and voluntary waiver of *Miranda* rights. *State v. Donelson,* 302 N.W.2d 125, 132 (Iowa 1981); *State v. Washington,* 257 N.W.2d 890, 895 (Iowa 1977). The standard for voluntariness in the *Miranda* waiver context is the same as is employed for determining voluntariness under the

Fourteenth Amendment for purposes of testing the admissibility of a confession. *Colorado v. Connelly,* 479 U.S. 157, 169–70, 107 S.Ct. 515, 523, 93 L.Ed.2d 473, 486 (1986). *Miranda* warnings may be orally transmitted to a subject in custody and the waiver of rights attendant thereto may be oral or may be inferred from the facts. *State v. Snethen,* 245 N.W.2d 308, 314 (Iowa 1976). Agent Rahn testified at the suppression hearing that "I first started out by reading her *Miranda* rights off of a card which I have in my notebook, and then she indicated she understood her rights and would be willing to speak with me." Defendant also testified at the suppression hearing and, in response to the prosecutor's questions, stated:

Q. [H]e read you the *Miranda* rights?
A. Yes.
Q. And you understood them? A. Yes.
Q. And you told him you understood them? A. Yes.

Defendant made no effort at the hearing to establish that she was mistaken as to her rights or that she was in any way coerced or intimidated into talking with agent Rahn.

■■ The burden of proving by a preponderance of the evidence that defendant voluntarily waived her constitutional rights is on the State. *State v. Countryman,* 572 N.W.2d 553, 559 (Iowa 1997). We are convinced that the State has sufficiently shown the interrogator's obligation to advise defendant of her *Miranda* rights was fully carried out and that defendant knowingly waived those rights. We also conclude that her subsequent confession was voluntary. We have considered several different factors in determining whether a statement is voluntary. These include the intellectual abilities of the defendant, *see State v. Reid,* 394 N.W.2d 399, 403 (Iowa 1986); whether the interrogator acted in a deceptive manner, *see State v. Jacoby,* 260 N.W.2d 828, 832–33 (Iowa 1977); whether the subject appeared to understand and respond to questions, *Reid,* 394 N.W.2d at 404; and whether the subject was physically abused or deprived of food or sleep, *see State v. Whitsel,* 339 N.W.2d 149, 154 (Iowa 1983).

■ The ultimate test is whether, under the totality of circumstances, the statements were the product of an essentially free and unconstrained choice, made by the subject at a time when that person's will was not overborne or the capacity for self-determination critically impaired. *Snethen,* 245 N.W.2d at 315; *State v. Cullison,* 227 N.W.2d 121, 127 (Iowa 1975). Based on the considerations we have discussed, we conclude that defendant's confession was in all respects voluntarily given.

### III. *Whether Defendant's Counsel Provided Ineffective Assistance.*

■ A. *Failure to request a bill of particulars.* Defendant asserts that her counsel should have requested a bill of particulars, as more than four sex acts were introduced into evidence and it was necessary for defendant to know which acts were at issue. The State argues the minutes of testimony gave adequate notice to the defendant of the alleged acts. The State further argues that the four specific sex acts were clearly identified in the evidence and closing argument presented at trial.

■ A bill of particulars is a more specific statement of the details of the offense charged. *State v. Conner,* 241 N.W.2d 447, 452 (Iowa 1976). Its purpose is to provide additional information, which the indictment and minutes of testimony do not give. *Id.* A bill of particulars should be allowed when the charge and

minutes do not inform the defendant of the specific acts of which she is accused. *Id.*

In reviewing the minutes of testimony, it is clearly stated that three separate witnesses would testify to sex acts between defendant and Zebidiah. The minutes specified that the acts included sexual intercourse between defendant and Zebidiah, defendant performing oral sex on Zebidiah, and Zebidiah performing oral sex on defendant. Additionally, defendant was notified of the name of the crime with which she was charged, the Code sections defining the offenses, the name of the victim, and the location of the acts. The trial information also alleged that the crimes took place between October 1, 1996, and July 21, 1998.

In evaluating the sufficiency of the trial information, we must consider that the statements of the victim and the confession of defendant were inexact as to the number and times of the sexual encounters that took place. Given this fact, the State was not able to pinpoint specific acts on specific dates. It simply alleged a series of acts within a specified time period. Under the circumstances, we believe that this was sufficient. Based on these considerations, the denial of a bill of particulars would not have been error if defendant's counsel had made such a motion. Consequently, defendant has failed to establish that her counsel was ineffective in not so moving.

█ B. *Failure to object to evidence of other criminal acts.* Evidence was admitted showing that defendant participated in many more acts of sexual abuse than were charged in the information. Defendant urges that these other criminal acts would not have been admissible and that her counsel was ineffective in failing to object to the admission of this evidence. The State argues that the evidence of the additional criminal acts would not have

been excluded because they were intrinsic to the case on trial.

Iowa Rule of Evidence 5.404(*b*) states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

The other purposes listed in the rule are not exclusive. *State v. Mitchell,* 633 N.W.2d 295, 298 (Iowa 2001). The important question is whether the disputed evidence is "relevant and material to some legitimate issue other than a general propensity to commit wrongful acts." *Id.* (quoting *State v. Barrett,* 401 N.W.2d 184, 187 (Iowa 1987)).

The State relies on federal cases that recognize proof of a series of similar events over time may be so blended or connected with the events on trial that proof of one necessarily requires reference to the other. *United States v. LeCompte,* 108 F.3d 948, 952 (8th Cir.1997); *United States v. Maddix,* 96 F.3d 311, 315 (8th Cir.1996); *United States v. Bettelyoun,* 892 F.2d 744, 746 (8th Cir.1989). In the present case, both the testimony of the victim and confession of defendant were inexact as to the number of sexual encounters that took place. Given that fact, the State, in proving its case, was properly permitted to proffer evidence of continual sexual activity in an effort to establish that, on at least four separate occasions during a specified period of time, an act of sexual abuse had occurred. Because the evidence would have properly been admitted for this purpose, defendant's trial counsel was not ineffective for failing to object.

**C.** *Failure to move for a directed verdict.* Defendant asserts that her trial counsel was ineffective for failing to move for a directed verdict based on insufficient evidence to prove four distinct acts of sexual abuse. The State argues that defendant ignores her confession admitting at least four acts of sexual abuse with Zebidiah on different occasions. We agree with the State that defendant's confession, corroborated by Zebidiah's testimony, constituted substantial evidence to support the jury's verdicts. Defendant's trial counsel was not ineffective for failure to move for a directed verdict.

**D.** *Failure to object during closing argument.* Defendant asserts that her trial counsel should have objected to prejudicial statements by the prosecutor in his closing argument. Prosecutors have a dual function. *State v. Webb,* 244 N.W.2d 332, 333 (Iowa 1976). They must vigorously prosecute defendants, but at the same time, they must assure the defendant a fair trial. *Id.* Prosecutorial misconduct only warrants a new trial when the conduct is "so prejudicial as to deprive the defendant of a fair trial." *State v. Anderson,* 448 N.W.2d 32, 33 (Iowa 1989) (citing *State v. Lyons,* 210 N.W.2d 543, 549 (Iowa 1973)).

Defendant points to a specific portion of the prosecutor's closing argument in asserting her claims for ineffective assistance of counsel. The prosecutor stated:

> We charged four counts. They are probably undercharged. We could have charged 50 counts, but certainly the pretty much conclusive evidence would be that at a very minimum there has to be at least four counts on each.

As we have previously noted, both the testimony of the victim and the confession of defendant were inexact as to the number of and times of the sexual encounters that took place. Given this fact, the State, in proving its case, offered all of the available evidence of sexual abuse during a specified period of time in an effort to establish that at least four acts of sexual abuse had been committed on separate occasions. We have previously rejected defendant's evidentiary challenges to that method of proof. Because we have found this evidence was properly admitted, it was not improper for the prosecutor to comment on it. Defendant's trial counsel was not ineffective in failing to challenge these statements of the prosecutor.

We have considered all issues presented and conclude that the judgment of the district court should be affirmed.

**AFFIRMED.**