# IN THE COURT OF APPEALS OF IOWA

No. 22-1832
Filed May 8, 2024

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**SHARON KAY COLLINS,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Boone County, Stephen A. Owen, Judge.

Sharon Collins appeals her convictions for child endangerment and the sentences imposed. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Joseph D. Ferrentino, Assistant Attorney General, for appellee.

Considered by Bower, C.J., Buller, J., and Mullins, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**MULLINS, Senior Judge.**

Sharon Collins[1] appeals her convictions on two counts of child endangerment and the sentences imposed. As to the convictions, she argues the evidence was insufficient to support one of the alternative theories for guilt—that she knowingly permitted continuing physical abuse of the children. In relation to this challenge, she argues the savings statute for general verdicts—Iowa Code section 814.28 (2021)—is unconstitutional, and she is therefore entitled to a new trial. As to the sentences, Sharon argues the "court impermissibly considered the [presentence investigation report's (PSI)] references to [her] difficulties with problem solving and decision-making as aggravating rather than mitigating factors."

I.      **Background**

S.S. was born in 2008. She began living with Tom and Sharon Collins when she was two or three years old. Tom is S.S.'s paternal grandfather and Sharon, being Tom's wife, is S.S.'s step-grandmother. T.F. was born in 2006. She began living with Tom and Sharon when she was six or seven years old. T.F. testified she was related to Sharon "[t]hrough marriage as a cousin." Aside from S.S. and T.F., several other children lived in the home over the years.[2] Tom and Sharon were the children's guardians, and the children considered one another to be

---

[1] This opinion will refer to the defendant by first name given the frequent references to her husband with whom she shares a surname.

[2] The evidence shows three girls, C.H., Z.A., and L.C., and a boy, J.A. lived in the home on consistent bases, while other children stayed in the home for brief periods of time, including boys R.E., R.S., and R.F., and girls E.E and C.S.

siblings.[3]   While the children were supposedly home schooled by Sharon, they spent little time on education, at least for S.S. and T.F.  Rather, most of S.S.'s and T.F.'s activities were labor-related and under Tom's supervision.

The jury was ultimately instructed that, as to one of the elements for each count of child endangerment, the State was required to prove Sharon did either or both of the following: "(a) Acted with knowledge that she was creating a substantial risk to [the girls'] physical, mental, or emotional health or safety; and/or (b) . . . knowingly permitted the continuing physical or sexual abuse of [the children].  Sharon does not dispute the State met its burden of proof for the first alternative (that she acted with knowledge that she was creating a substantial risk to the physical, mental, or emotional health or safety of T.F. and S.S.) and one of the options under the second alternative (that she knowingly permitted their continuing sexual abuse at the hands of Tom).[4]

---

[3] Some were indeed siblings, while others shared some other sort of familial connection to one another.

[4] To summarize, S.S. testified the sexual abuse began when she was five or six years old, after which it became "common" for Tom to initiate genital-to-genital, oral-to-genital, and hand-to-genital contact with her, which occurred multiple times per week and continued until she left the home in August 2021.  T.F. testified the sexual abuse against her started when she was seven or eight years old.  The abuse against T.F. began with an instance of genital-to-genital contact.  Similar abuse continued thereafter and occurred "[a]lmost every other day" until T.F. turned fourteen.  Both girls testified the abuse would occur pretty much "anywhere and everywhere" on the large family farm property.  Both girls also testified one of the more common themes of abuse would involve Tom having them ride on the tractor or lawnmower with him, during which Tom would touch their genitals with his hand.  The girls attempted to alert Sharon about the abuse, but she ignored them.  In her defense, Sharon testified she never knew anything about sexual abuse when it occurred.  Yet, Sharon's aunt testified she told Sharon about the abuse after one of the girls disclosed it to her, and Sharon's response indicated she already knew what was going on.

As to the option that Sharon does challenge under the second alternative—that she knowingly permitted continuing physical abuse of the children—S.S. testified Tom typically disciplined her, while Sharon typically disciplined T.F. S.S. explained she would be disciplined by, among other things, being "spanked with boards, with a belt," and "get[ting] slapped across the face." She elaborated Tom hit her with boards and it left bruises, and the slapping in the face was done by Sharon "a couple times" and by Tom "a lot." S.S. also observed Sharon hit T.F. Sarah Smalley-Knowler is a nurse's aide who provided in-home healthcare to one of the other children in the home. She stated she observed instances of physical abuse in the home "[m]any a times." She recalled that, on one occasion, she heard a slap and then came around a corner and observed Sharon with her hands around T.F.'s throat. T.F. also "had a red print on her left cheek," apparently from the slap. She also recalled frequently observing markings on S.S.'s person consistent with physical abuse. Smalley-Knowler testified she was a mandatory reporter and disclosed her concerns about the foregoing to her boss, but nothing ever came of it. Sharon testified she never observed Tom hit S.S. with boards or observe any suspicious bruising on her. She also denied choking T.F. or slapping either child.

All of the allegations of abuse ultimately came to light in August 2021. For her part, Sharon was charged by trial information, as amended, with two counts of child endangerment. The matter proceeded to trial and, following the State's case-in-chief, the defense moved for judgment of acquittal, arguing only that the State failed to prove Sharon "had any knowledge of any sexual abuse that was

happening." That motion was denied, as was the renewed motion following the close of evidence.[5]

During deliberations, the jury submitted the following written question: "What is the legal definition of physical abuse? emotional abuse? mental abuse?" The court directed the jury to review the marshalling instructions for child endangerment. On general verdict forms, the jury subsequently found Sharon guilty as charged. The ensuing PSI noted Sharon "presents issues related to problem-solving and decision-making." In announcing its sentencing decision at the subsequent hearing, the court noted its consideration of Sharon's age; her education, employment, and family circumstances; her lack of a criminal history; the "shocking and egregious" nature of the crimes; the effect on the victims; Sharon's need for rehabilitation; and protection of the community. The court then stated:

> The PSI notes that she presents with issues related to problem solving and decision-making. I think that says a lot about what sort of sentence should be imposed here. Certainly I think lay people look at prison sentences as punishment. They are nevertheless rehabilitative in nature. It provides structure and appropriate rehabilitation for offenders who constitute dangers to their community. [Sharon] fits in this category of an offender. Her need to understand the problem she has failed to solve and make better decisions in the future is necessary. Children of this community deserve protection.

Based on all of these considerations, the court sentenced Sharon to dual terms of imprisonment not to exceed two years, to be served consecutively.

Sharon appeals.

---

[5] We note defendants can now challenge the sufficiency of evidence on direct appeal without preserving error on a specific challenge by motion for judgment of acquittal. *See State v. Crawford*, 972 N.W.2d 189, 194 (Iowa 2022).

**II.    Discussion**

**A.    Introduction**

From the outset we note the jury was provided with two alternative theories for child endangerment—that Collins either (1) "[a]cted with knowledge that she was creating a substantial risk to [the children's] physical, mental, or emotional health or safety" or (2) "knowingly permitted the continuing physical or sexual abuse of [the children]"—and the jury returned general verdicts.  Collins argues the "physical abuse" option under the second alternative is not supported by sufficient evidence.

Under former law, "if a jury returned a general verdict in a case involving multiple theories to establish the same offense but not all theories were supported by sufficient evidence, the defendant would generally be entitled to a new trial without the unsupported theories."  *State v. West Vangen*, 975 N.W.2d 344, 348 (Iowa 2022).  In 2019, our legislature overruled that practice by enacting Iowa Code section 814.28, which provides:

> When the prosecution relies on multiple or alternative theories to prove the commission of a public offense, a jury may return a general verdict.  If the jury returns a general verdict, an appellate court shall not set aside or reverse such a verdict on the basis of a defective or insufficient theory if one or more of the theories presented and described in the complaint, information, indictment, or jury instruction is sufficient to sustain the verdict on at least one count.

*Accord West Vangen*, 975 N.W.2d at 348 (noting prior practice is "no longer the case" given section 814.28); *see also State v. Brimmer*, 983 N.W.2d 244, 259 (Iowa 2022) (noting prior caselaw was superseded by section 814.28); *State v. Stendrup*, 983 N.W.2d 231, 243 (Iowa 2022) (same).

Assuming she is successful on her challenge to the sufficiency of the evidence supporting knowing permission of continuing physical abuse, Sharon argues section 814.28 is unconstitutional in various respects and therefore does not save the general verdicts. But if the challenged "theory is supported by substantial evidence, the statute is not implicated and we need not address the constitutional challenge." *State v. Hivento*, No. 21-1445, 2023 WL 2395729, at *7 (Iowa Ct. App. Mar. 8, 2023). We proceed accordingly, prior to addressing Sharon's sentencing challenge. *See id.*

### B.  Sufficiency of Evidence

We review challenges to the sufficiency of evidence for errors at law, giving deference to the verdict, which binds us if it is supported by substantial evidence. *State v. Cahill*, 972 N.W.2d 19, 27 (Iowa 2022). We view "the evidence 'in the light most favorable to the State, including all reasonable inferences that may be fairly drawn from the evidence.'" *State v. Ortiz*, 905 N.W.2d 174, 180 (Iowa 2017) (quoting *State v. Huser*, 894 N.W.2d 472, 490 (Iowa 2017)). All evidence is considered, not just that of an inculpatory nature. *See Huser*, 894 N.W.2d at 490. A verdict will be upheld if substantial evidence supports it. *State v. Wickes*, 910 N.W.2d 554, 563 (Iowa 2018) (quoting *State v. Ramirez*, 895 N.W.2d 884, 890 (Iowa 2017)). "Evidence is substantial if, 'when viewed in the light most favorable to the State, it can convince a rational [factfinder] that the defendant is guilty beyond a reasonable doubt.'" *Id.* (quoting *Ramirez*, 895 N.W.2d at 890). Evidence is not rendered insubstantial merely because it might support a different conclusion; the only question is whether the evidence supports the finding actually made. *See State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021).

On appeal, Sharon argues "there was no proof of continuing physical abuse. Nor was there evidence that [she] knew about such continuing physical abuse, and with such knowledge permitted it to happen." She implies the evidence does not show the acts were anything beyond reasonable corporal punishment. She also claims there was no evidence to show she was aware of the physical abuse of S.S. by Tom. And she claims the only physical abuse against T.F. that was shown by the evidence was by Sharon herself, which does not amount to Sharon "permitting" someone else to engage in abuse.

Viewing the evidence in the light most favorable to the State, it shows S.S. was abused by Tom in the home by being slapped in the face and hit with boards. The jury, which does not leave its common sense at the door, could rationally conclude this went beyond reasonable corporal punishment. And while Sharon argues the evidence does not show she knew about it, there was ample circumstantial evidence to show that she would have been present when this abuse was occurring. *See State v. Watkins*, 659 N.W.2d 526, 537 (Iowa 2003) (noting proximity to victim supported knowing permission of continuing physical abuse). The evidence also shows Sharon herself abused S.S. from time to time by slapping her in the face as well, and Sharon engaged in similar conduct against T.F., who she also choked on at least one occasion. Using its common sense, the jury could likewise conclude this was excessive. As to Sharon's claim that the children's abuse at her hands does not qualify as child endangerment because she was not knowingly permitting a third-party to engage in the abuse, the instructions to the jury said nothing about requiring the involvement of a third party. The instructions simply required a finding "the defendant knowingly permitted the

continuing physical or sexual abuse." As such, the jury could consider any combination of Sharon's conduct and Tom's conduct to conclude Sharon knowingly permitted the continuing physical abuse. To the extent Sharon argues there was insufficient evidence to show the abuse was continuous, the evidence paints a picture of an ongoing house of horrors for these children. The nursing aid cogently testified she witnessed physical abuse in the home "[m]any a times." We find the evidence sufficient to support the physical abuse sub-alternative.

Even if the evidence was insufficient to show physical abuse, at least as to how Sharon frames the term, the jury was not instructed as to what it could consider physical abuse. Indeed, jurors exercising their common sense could rationally conclude that physical abuse and sexual abuse are not mutually exclusive, and the former could certainly include the latter, which Sharon does not argue the State failed to provide substantial evidence to support. Physical abuse could be considered any abuse "of or relating to the body," *Physical*, Merriam-Webster, https://www.merriam-webster.com/dictionary/physical, which would unquestionably encompass sexual abuse.[6] Since Sharon agrees the State provided substantial evidence to show she knowingly permitted continuing sexual abuse, the jury could also rationally conclude she knowingly permitted continuous physical abuse. Finally, Sharon is not challenging an entire theoretical alternative for the crime. She is only challenging a sub-alternative. Since she does not challenge the other sub-alternative involving sexual abuse, we could simply affirm

---

[6] *Cf.* Tammi Markowitz, Note, *Doe v. Hillsboro Independent School District: The Fifth Circuit Refuses to Hold Schools Liable under § 1983*, 8 Temp. Pol. & Civ. Rts. L. Rev. 193, 193 n.5 (1998) ("[M]any courts have agreed that sexual abuse is a form of physical abuse . . . .").

under that sub-alternative. *See Hivento*, 2023 WL 2395729, at *10. Either way, we conclude the evidence allowed the jury to rationally conclude Sharon knowingly permitted continuous physical abuse of both children.

### C.      Constitutional Claims

Having rejected Sharon's challenge to the sufficiency of evidence, we need not address her corresponding challenge to section 814.28 as unconstitutional. *Id.*

### D.      Sentencing

Turning to Sharon's sentencing challenge, our review is for correction of errors at law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). "A sentence will not be upset on appellate review unless the defendant demonstrates an abuse of trial court discretion or a defect in the sentencing procedure such as the trial court's consideration of impermissible factors." *State v. Witham*, 583 N.W.2d 677, 678 (Iowa 1998).

Sharon argues the "court impermissibly considered the PSI's references to [her] difficulties with problem solving and decision-making as aggravating rather than mitigating factors." But this argument assumes said difficulties were mitigating circumstances. She says they were mitigating factors because "they were presented by the PSI writer as mitigating circumstances that helped explain her failure to properly perform her guardianship duties in the instant case."

On our review of the PSI, we disagree with Sharon that the PSI investigator presented these factors as mitigating. The PSI stated: "The defendant does not have an adult criminal record and has not been on supervision. *However*, the defendant presents issues related to problem-solving and decision-making." (Emphasis added.) The preparer was certainly presenting Sharon's lack of a

criminal history and resulting need for supervision as mitigating. The use of the term "however" when referencing the other factors indicates those were being presented as non-mitigating. And the court viewed Sharon's lack of a criminal history as mitigating, while it viewed her issues related to problem solving and decision-making as demanding a rehabilitative sentence involving prison. We find no abuse of discretion and affirm.

## III.    Conclusion

We affirm the convictions as supported by substantial evidence. As a result, we need not address the challenge to the constitutionality of Iowa Code section 814.28. Finding no abuse of discretion in sentencing, we affirm the sentences imposed.

**AFFIRMED.**