# IN THE COURT OF APPEALS OF IOWA

No. 23-2056
Filed May 7, 2025

**JESSICA ANNE DAYTON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Iowa County, Andrew B. Chappell,

Judge.

Jessica Dayton appeals the denial of her application for postconviction

relief. **AFFIRMED.**

Webb L. Wassmer of Wassmer Law Office, PLC, Marion, for appellant.

Brenna Bird, Attorney General, and Aaron Rogers, Assistant Attorney

General, for appellee State.

Considered without oral argument by Greer, P.J., Buller, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2025).

**DOYLE, Senior Judge.**

Jessica Dayton appeals the denial of her application for postconviction relief (PCR) from her conviction of first-degree murder. Dayton is one of three people convicted for killing Curtis Bailey in 2009. This court affirmed her conviction on direct appeal. *State v. Dayton*, No. 10-1161, 2011 WL 4578505, at *1 (Iowa Ct. App. Oct. 5, 2011).

In January 2013, Dayton asked the court to appoint her counsel to pursue this PCR action. Her PCR application, filed in January 2015, raised nine claims of ineffective assistance of trial counsel. The proceedings languished for seven years as the court granted the parties' requests for continuances and appointed new counsel for Dayton. In March 2022, one month before trial was scheduled to begin, Dayton asked for another continuance. One month later, Dayton amended her PCR application to claim actual innocence and a violation of her due process rights based on the State presenting different theories at each defendant's trial. The PCR trial was held in May 2023.

In November 2023, the PCR court issued its ruling denying Dayton PCR. The court found that Dayton failed to prove her trial counsel was ineffective in any of the ways she alleged on each of her claims. Dayton moved the court to reconsider its finding that her counsel did not fail to perform an essential duty by failing to call a witness to attack the credibility of a "jailhouse snitch" called by the State. The court denied the motion. Dayton appeals the denial of her due process claim and five claims of ineffective assistance.

We generally review the PCR court's ruling for correction of errors at law. *See Sothman v. State*, 967 N.W.2d 512, 522 (Iowa 2021). Because Dayton claims

her constitutional rights were violated, we review the record de novo. *See id.* On de novo review, we give weight to the PCR court's findings although we are not bound by them. *See id.*

Dayton first contends she is entitled to PCR because the State violated her due process rights in the underlying criminal proceedings. But Dayton did not raise this issue at trial or on direct appeal. And by statute, postconviction relief is not available for claims that could have been raised at trial or on direct appeal but were not, unless the applicant can show "sufficient reason." Iowa Code § 822.8. "[I]neffective assistance of [trial or] appellate counsel may provide sufficient reason." *See Berryhill v. State*, 603 N.W.2d 243, 245 (Iowa 1999); *Osborn v. State*, 573 N.W.2d 917, 921 (Iowa 1998). The State urged section 822.8 as a barrier to deciding the due-process claim below, and we may rely on it to affirm even though it was not the focus of the postconviction court's ultimate ruling. *See DeVoss v. State*, 648 N.W.2d 56, 62 (Iowa 2002). Dayton did not litigate this claim as an ineffective-assistance claim below or on appeal, and she has not shown "sufficient reason" for not raising the claim on direct appeal. We conclude relief on this issue is barred by section 822.8.

But, even if we were to set aside section 822.8, Dayton would not be entitled to relief on the merits. The State charged three people with Bailey's murder: Denise Frei, Dayton's live-in girlfriend; Jacob Hilgendorf, Frei's son; and Dayton, who was dating Hilgendorf. Each defendant was tried separately, and Dayton's trial was held first. The State's theory about each person's involvement differed slightly based on the evidence presented during each trial. The PCR court summarized the theory presented to the court at Dayton's trial:

Frei wanted Bailey dead. She enlisted the assistance of Dayton and Hilgendorf. Frei and Dayton would get Bailey so intoxicated, by engaging in sexual favors with each other as an enticement for him to drink excessive alcohol, that he would pass out. Hilgendorf would then join them. Then, after Bailey was passed out, he would be suffocated with Saran Wrap. During the plan's undertaking, while one of them was wrapping Bailey's head with the Saran Wrap, Bailey woke up and apparently fought back. At that point, someone grabbed a rock from somewhere and beat him with it (and likely other things) until he was dead.

The PCR court found the theory was "entirely consistent" with the one offered during Frei's trial and "consistent with the theory of the case presented at Hilgendorf's trial, though his trial focused more on his actual involvement." It noted that both Frei and Hilgendorf confessed to some level of involvement in the murder, although their stories were not identical [1] For that reason, the PCR court found, "Even after hearing from all three participants in the PCR trial, what *actually* happened, at least in its completest sense, remains unclear."

Ultimately, the PCR concluded that the differences Dayton identified are "little more than hair splitting" rather than the "major, irreconcilable discrepancies" she alleges:

> For instance, Dayton focusses heavily on the testimony about the rock that was used to murder Bailey. Where did the rock come from? Was it next to the aquarium? Did Dayton get it from outside? Were there multiple rocks? Who all used the rock(s) to strike Bailey? Who struck him first? Absent a video recording of the incident or a confession signed by all three defendants, it seems unlikely these things are knowable to a high degree of certainty. Moreover, the State did not have to prove that Dayton alone used the rock (or even that she actually used the rock) in order to prove her guilty of Murder in the First Degree.
> Dayton also argues there were discrepancies in what the actual plan was. Was it to get Bailey drunk or to overdose him? Was he to be killed with the Saran Wrap or did Hilgendorf just use the

---

[1] Hilgendorf implicated only himself in the crime, while Frei implicated both Hilgendorf and Dayton.

drinking game as an opportunity to kill Bailey because he hated him? Was Runyan clear enough each time she testified about who exactly was involved in the plan and what she was told?

The supreme court recognizes that the State has the right to rely on alternative theories in criminal prosecutions even when its theories are inconsistent. *See State v. Watkins*, 659 N.W.2d 526, 532 (Iowa 2003). A narrow exception to this general rule exists if the State's selective use of evidence to support different theories in separate prosecutions for the same crime is "so egregious and lacking in good faith as to constitute a denial of due process." *Id.* Courts have found inconsistencies are egregious enough to violate due process when they are inherent to the State's entire theory of the case or the varying material facts cannot be reconciled—not when differences arise from ambiguous evidence that allows for varying rational inferences. *See State v. Parmer*, No. 13-2033, 2015 WL 2393652, at *3 (Iowa Ct. App. May 20, 2015). This case involves the latter, not the former. Thus, the district court did not err by denying Dayton PCR for an alleged due process violation.

We turn, then, to Dayton's ineffective-assistance claims. She alleges five ways in which her counsel was ineffective in preparing for and performing at trial: (1) failing to interview and call potential witnesses, (2) failing to visually examine a cast of the landscaping rock identified as the murder weapon, (3) deciding to try Dayton's case before the trials of Hilgendorf and Frei, (4) misapprehending Dayton's statements about the events surrounding Bailey's death, and (5) failing to obtain and present a copy of a video allegedly showing Dayton's confession to another inmate. To succeed on any of these claims, Dayton must show her trial counsel failed to perform an essential duty and the failure caused her prejudice.

*See Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001). "Both elements must be proven by a preponderance of the evidence." *Id.*

The PCR court began its analysis by observing that most of Dayton's claims "amount to little more than Monday morning quarterbacking." *See Hinkle v. State*, 290 N.W.2d 28, 30 (Iowa 1980) (cautioning against "the temptation to Monday morning quarterback the lawyer in the arena" when analyzing whether counsel performed competently). It found evidence that Dayton was represented by very competent counsel at her criminal trial, noting he "had significant experience in criminal trial matters" and "performed his duties in a deliberative manner." The PCR court also found trial counsel's testimony to be "very credible": "He was contemplative in his responses. He did not oversell his answers. He was not defensive or evasive." It also found that Dayton was not displeased with her trial counsel's representation during the trial, praising his performance in phone calls to family and in a letter sent after trial. As the court observed, "Just because his defense of Dayton was unsuccessful, does not mean that it was deficient."

The PCR court's ruling thoroughly examines and disposes of each claim that trial counsel's performance fell short, and reiterating its reasoning would serve no purpose here. But even if we were to assume counsel performed deficiently, Dayton cannot show prejudice. "To sustain this burden, [Dayton] must demonstrate 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Ledezma*, 626 N.W.2d at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). As the PCR court noted, we found overwhelming evidence of Dayton's guilt when we affirmed her convictions on direct appeal. *See Dayton*,

2011 WL 4578505, at *6 ("[W]e do not see how the evidence of Dayton's guilt can be viewed as anything short of overwhelming."). Even if trial counsel had performed as Dayton wishes, we agree with the PCR court's conclusion that "significant evidence that came in . . . connected Dayton to the plot, to the scene, and to the killing itself. The incidences of ineffectiveness Dayton identifies in her Briefs do not significantly impact the majority of the evidence offered against her at trial."

Because Dayton falls short of the threshold showing required to grant PCR, we affirm the order denying her application.

**AFFIRMED.**